HIGGINS COMPANY, a Minnesota Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

DuNORD LAND COMPANY, a Minnesota Corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 5–74–64 and 5–74–63.

United States District Court, D. Minnesota, Fifth Division.

Jan. 4, 1977.

Loren W. Sanford, Duluth, Minn., for plaintiffs.

Robert G. Renner, U. S. Atty., Minneapolis, Minn., Daniel J. Dinan, Atty., Dept. of Justice, Washington, D. C., for defendant.

## ORDER

MILES W. LORD, District Judge.

These actions were brought separately and later consolidated. They involve an interpretation of Sections 631(c) and 272 of the Internal Revenue Code of 1954 as amended. The facts in each case are identical except for the amounts of the refunds claimed by each plaintiff company. In addition, plaintiff DuNord has filed refund claims for the tax years 1965–67 inclusive, whereas, the plaintiff Higgins has filed refund claims only for the years 1966 and 1967.

## FACTS

The parties have submitted cross motions for summary judgment which are based upon the following stipulated facts:

1. Plaintiff is a Minnesota corporation, and its office and principal place of business is 417 First National Bank Building, Duluth, Minnesota.

2. The principal business activity of the Plaintiff is the ownership of interests in iron ore and other lands in the United States and the disposal of that iron ore to unrelated persons who mine the iron ore in

the United States under a form of contract by virtue of which Plaintiff retains an economic interest in such iron ore, such that the amount of gain to be recognized from the disposal of such iron ore is to be determined by Section 631(c) of the Internal Revenue Code of 1954, as amended by Public Law 88–272, Section 227. An "unrelated person" is a corporation whose relationship to the Plaintiff would not deprive Plaintiff of the treatment of income provided by Section 631(c) of the Internal Revenue Code of 1954, as amended by Public Law 88–272, Section 227.

3. Minn.Stat., Chapter 290, imposed an income tax and an additional privilege and income tax on all domestic corporations for the taxable years in question.

4. (a) Pursuant to Minn.Stat., Chapter 290, Plaintiff paid to the State of Minnesota $7,556.36 in its taxable year ending May 31, 1966.

(b) During its taxable year ending May 31, 1966, Plaintiff received royalties in the amount of $72,720.55 under contracts of the type described in paragraph 2 for minerals located in Minnesota which it had held for at least six months. For that same year, Plaintiff's total gross income from all sources, including royalties, was $73,474.30. Due to proper deductions, Plaintiff has no taxable ordinary income for such year.

(c) Plaintiff timely filed its Federal income tax return for its taxable year ending May 31, 1966. In order to determine, under Internal Revenue Code, Section 631(c), the gain to be recognized upon the disposal of domestic iron ore held for more than six months and disposed of under a contract by virtue of which Plaintiff retained an economic interest in the iron ore in place, Plaintiff subtracted from its gross receipts derived from the disposal of such iron ore $7,478.53 of the Minnesota income taxes paid in that year. If it is determined that Minnesota income taxes paid are a deduction disallowed by Section 272 of the Internal Revenue Code of 1954, as amended by Public Law 88–272, Section 227, then this amount was correctly subtracted from Plaintiff's gross receipts derived from the disposal of iron ore.

(d) The Internal Revenue Service determined income taxes paid to the State of Minnesota to be an improper subtraction from gross receipts for the purpose of determining the gain from this disposal of iron ore, and notified Plaintiff on September 29, 1969, of an income tax deficiency for the taxable year ending May 31, 1966, in the amount of $1,856.47.

5. (a) Pursuant to Minn.Stat., Chapter 290, Plaintiff paid to the State of Minnesota $5,666.25 in its taxable year ending May 31, 1967.

(b) During its taxable year ending May 31, 1967, Plaintiff received royalties in the amount of $51,304.94 under contracts of the type described in paragraph 2 for minerals located in Minnesota which it had held for at least six months. For that same year, Plaintiff's total income from all sources, including royalties, was $53,643.21. Due to proper deductions, Plaintiff had no taxable ordinary income for the same year.

(c) Plaintiff timely filed its Federal income tax return for its taxable year ending May 31, 1967. In order to determine, under Internal Revenue Code, Section 631(c), the amount of gain to be recognized upon the disposal of domestic iron ore held for more than six months and disposed of under a contract by virtue of which Plaintiff retained an economic interest in the iron ore, Plaintiff subtracted from its gross receipts derived from the disposal of such iron ore $5,419.20 of the Minnesota income taxes paid in that year. If Minnesota income taxes are a deduction disallowed by Section 272 of the Internal Revenue Code of 1954, as amended by Public Law 88–272, Section 227, then this is the correct amount to be subtracted from gross receipts to determine the amount of gain to be recognized.

(d) The Internal Revenue Service determined income taxes paid to the State of Minnesota to be an improper subtraction from gross receipts for the purpose of determining gain from this disposal of iron ore, and notified Plaintiff on September 29, 1969, of an income tax deficiency for the

taxable year ending May 31, 1967, of $1,354.80.

6. Plaintiff paid such deficiencies on December 15, 1969.

7. Plaintiff properly and timely filed a claim for refund of the taxes paid pursuant to the deficiency notices on December 14, 1971.

8. On July 14, 1972, the Internal Revenue Service disallowed in full Plaintiff's claims for a refund.

9. This civil suit for the recovery of Internal Revenue taxes alleged to have been erroneously or illegally assessed was timely filed.

10. This Court has jurisdiction of this matter. The venue of the matter is properly set in the District of Minnesota, Fifth Division.

11. The mineral properties subject to the contracts described in paragraph 2 under which Plaintiff received royalty income in the taxable years in question is property of the type subject to execution, sale and forfeiture under Minnesota law for failure to pay State of Minnesota income taxes.

12. Plaintiff's (lessor) contracts under which it retained an economic interest and which produced the iron ore royalty income described in paragraphs 4 and 5 contain lessor's covenants and warranties requiring protection of its title and ownership.

13. The Minnesota income tax subtracted by Plaintiff from gross royalty income, namely $7,478.53 and $5,419.20 in 1966 and 1967 respectively, is attributable solely to income derived from royalties under contracts of the type described in paragraph 2 above.

## CONCLUSIONS OF LAW

As indicated by the stipulation of facts, the legal issue to be determined by the Court is whether the plaintiffs properly deducted their Minnesota income taxes from their gross royalty income derived from the disposal of iron ore. The resolution of this question is dependent upon an interpretation of the language contained in § 272 of the Internal Revenue Code of 1954 as amended (I.R.C.).

The plaintiff corporations own iron ore properties which they lease to either mining or steel companies. Their principal income is derived from royalties received as a result of these leases. Because of the fact that the product involved is iron ore and the fact that the plaintiffs have retained their interest in the iron ore for more than six months, they are eligible to treat their royalty income as a capital gain pursuant to § 631(c), I.R.C.[1] Under ordinary circum-

---

1. Section 631(c) provides as follows:

(c) Disposal of coal or domestic iron ore with a retained economic interest.—In the case of the disposal of coal (including lignite), or iron ore mined in the United States, held for more than 6 months before such disposal, by the owner thereof under any form of contract by virtue of which such owner retains an economic interest in such coal or iron ore, the difference between the amount realized from the disposal of such coal or iron ore and the adjusted depletion basis thereof plus the deductions disallowed for the taxable year under section 272 shall be considered as though it were a gain or loss, as the case may be, on the sale of such coal or iron ore. Such owner shall not be entitled to the allowance for percentage depletion provided in section 613 with respect to such coal or iron ore. This subsection shall not apply to income realized by any owner as a co-adventurer, partner, or principal in the mining of such coal or iron ore, and the word "owner" means any person who owns an economic interest in coal or iron ore in place, including a sublessor. The date of disposal of such coal or iron ore shall be deemed to be the date such coal or iron ore is mined. In determining the gross income, the adjusted gross income, or the taxable income of the lessee, the deductions allowable with respect to rents and royalties shall be determined without regard to the provisions of this subsection. This subsection shall have no application, for purposes of applying subchapter G, relating to corporations used to avoid income tax on shareholders (including the determinations of the amount of the deductions under section 535(b)(6) or section 545(b)(5)). This subsection shall not apply to any disposal of iron ore—
(1) to a person whose relationship to the person disposing of such iron ore would result in the disallowance of losses under section 267 or 707(b), or
(2) to a person owned or controlled directly or indirectly by the same interests which own

stances, the gain realized by the plaintiffs would not be treated as capital gain income. § 631(c) was adopted by Congress as a special tax preference in order to encourage the production of iron ore. *See*, Mertens, *Code Commentary*, § 272.1 (1975).

A companion provision to § 631(c) is § 272. § 272 provides as follows:

Where the disposal of coal or iron ore is covered by section 631, no deduction shall be allowed for expenditures attributable to the making and administering of the contract under which such disposition occurs and to the preservation of the economic interest retained under such contract, except that if in any taxable year such expenditures plus the adjusted depletion basis of the coal or iron ore disposed of in such taxable year exceed the amount realized under such contract, such excess, to the extent not availed of as a reduction of gain under section 1231, shall be a loss deductible under section 165(a). This section shall not apply to any taxable year during which there is no income under the contract.

Under this section if the disposal of iron ore is covered by § 631(c), no deduction against ordinary income shall be allowed for expenditures attributable to "the making and administering" of the iron ore contract or to the "preservation of the economic interest retained under such contract." If the expenditures are attributable to "the making and administering of the contract" or "to the preservation of the economic interest" retained under the contract, then they must be offset against the capital gain income computed under § 631(c) and cannot be deducted from ordinary income.

The problem presented in the instant case is that the plaintiffs had no ordinary in-

come for the tax years in question. Their income consists entirely of royalty income from the disposal of iron ore which income is treated as a capital gain pursuant to § 631(c). Therefore, unless it is adjudged that Minnesota income taxes are expenditures attributable to the administering of the contract or to the preservation of the economic interest retained under the contract, the plaintiffs will be unable to take their state income taxes as a deduction.

With respect to whether the state income taxes are "attributable to" the making or administering of the plaintiffs' iron ore contracts, the government argues that in order for an expenditure to be "attributable to" the making of the contract it must have a direct connection to the contract. It is the government's position that income taxes are only an indirect consequence of the contract and therefore cannot be offset against the plaintiffs' § 631(c) income. In support of their position, the government cites both the regulations pertaining to § 272, 26 C.F.R. § 1.272 (1975), and its Legislative History, S.Rep.No.1622, 83 Cong., 2d Sess. pp. 229–230 (1954); U.S.Code Cong. & Admin.News 1954, p. 4204. 26 C.F.R. § 1.272–1(d)(1) lists examples of what expenditures are considered attributable to the making and administering of an iron ore contract or to the preservation of the economic interest retained under the contract.[2] Essentially these examples are derived from the Legislative History of § 272, *supra*. Income taxes are not one of the expenditures listed.

The plaintiffs argue that the regulations, 26 C.F.R. § 1.272–1(d)(1), specifically state that expenditures which qualify for § 272 treatment are not limited to those specified

---

or control the person disposing of such iron ore.

**2.** 26 C.F.R. § 1.272–1(d)(1) provides as follows: The expenditures referred to in section 272 include, but are not limited to, the following items, if such items are attributable to the making or administering of the contract or preserving the economic interest therein: Ad valorem taxes imposed by State or local authorities, costs of fire protection, costs of insurance (other than liability insurance),

costs incurred in administering the contract (including costs of bookkeeping and technical supervision), interest on loans, expenses of flood control, legal and technical expenses, and expenses of measuring and checking quantities of coal or iron ore disposed of under the contract. Whether the interest on loans is attributable to the making or administering of the contract or preserving the economic interest therein will depend upon the use to which the borrowed monies are put.

in the body of the regulation.[3] Further, the plaintiffs argue that the government's interpretation of the "attributable to" language as requiring a direct relation is without foundation. The plaintiffs maintain that the words should be given their common ordinary meaning and construed broadly. It is their contention that since all of their income is derived from iron ore royalties, it is clear that the income taxes resulting from such income are attributable to the making or administering of the iron ore contracts.

A second argument advanced by the plaintiffs is equitable in nature. The plaintiffs contend that in the normal situation, the government would argue that the words "attributable to" should be construed broadly so as to minimize the ability of individuals to offset expenses against ordinary income since in most instances this would be more favorable to the taxpayer. The plaintiffs argue that the government has adopted a more restrictive interpretation in this case because they have no ordinary income and if they are unable to offset their taxes against their § 631(c) income, they will be unable to take the taxes as a deduction.

Both parties acknowledge that there is no case law which interprets the language of § 272 specifically. Therefore, the instant case is one of first impression and after considering the arguments of both parties, it is the Court's conclusion that the government must prevail.

It is true, as the plaintiffs contend, that the expenditures listed in 26 C.F.R. § 1.272–1(d)(1) are not intended to be all inclusive. However, it is also clear from the examples listed that the type of expenditures contemplated by § 272 are intended to have a direct connection to the contract as the government argues.

Costs of administering the contract, legal and technical expenses, and costs of measuring and checking quantities of iron ore sold, the examples contained in the regulations to § 272, are all directly related to the making and administering of iron ore contracts. Income taxes are an indirect consequence of the net income which is derived from the contract. They are not expenditures which are related directly to the actual management or making of the contract.

In *Taylor v. Commissioner of Internal Revenue*, 298 F.2d 198 (4th Cir. 1962), the taxpayer attempted to deduct his state income taxes from capital gain income realized from the sale of stock. The court held that such a deduction was improper:

"When gain is realized in a capital transaction, the assessment of income taxes may be inevitable, in a sense, but resulting income taxes are highly contingent. Other unrelated transactions resulting in capital losses can reduce, or obliterate, the contingent liability . . . Income taxes may not be capitalized. It is true that the taxpayer here is not attempting to increase his basis, as such, by virtue of the payment, after the sale, of South Carolina income taxes. He seeks to achieve its capitalization on a different theory, that it is a cost of sale, rather than an adjustment of basis. However, it seems clear that income taxes are an expense which cannot be capitalized either as an adjustment to basis, or as an expense of the sale out of which the contingent income tax obligation arose." 298 F.2d at 203–204.

Although the facts in *Taylor* are not applicable to the instant case, the Court's holding that income taxes are a contingent liability to the realization of gain is relevant.

Similarly, income taxes are not directly related to the preservation of the economic interest under the contract. The regulations specifically state that ad valorem taxes are attributable to the preservation of the economic interest. However, as noted by the government, the ad valorem tax is directly related to the property because it is a tax on the mine itself whereas state income taxes are based on a corporation's net income. Under Minnesota law, no minerals can be removed from real property until the real property taxes have been paid. M.S.A.

---

**3.** See footnote 2, *supra*.

**6**

§ 272.39 (1969). However, income taxes are levied on a corporation's net income and not on its real property. If property is sold to satisfy deficient income taxes, personal property is sold before real property. Moreover, there is no provision under Minnesota Law that minerals may not be removed while income taxes are unpaid.

The plaintiffs may very well be correct in suggesting that the Internal Revenue Service has tailored its legal arguments to fit the particular facts of this case. However, it is the Court's conclusion that the legislative intent of § 272 did not contemplate state income taxes as an expenditure "attributable to the making and administering" of an iron ore contract or "to the preservation of the economic interest retained under such contract." Therefore, if the plaintiffs are to obtain relief it must come from the legislature and not the courts.

On the basis of the foregoing authority, It Is Ordered & Adjudged that:

1) The plaintiffs' motion for summary judgment is denied;

2) The defendant's motion for summary judgment is granted.

Let judgment be entered accordingly.

IT IS SO ORDERED.